UNITED STATES of America, Plaintiff,

v.

Robert J. BURNS; Daniel Dracup; Charlotte Dracup; Daniel S. Dracup and Co.; Robert E. Ward, Jr.; and Ward Transformer Co., Inc., Defendants.

Civ. A. No. 80–1424.

United States District Court,
W. D. Pennsylvania.

April 14, 1981.

William F. Ward, Craig R. McKay, Asst. U. S. Attys., Pittsburgh, Pa., Michael Elder, Lloyd S. Guerci, Hazardous Waste Section, Land and Natural Resources Div., Dept. of Justice, Washington, D. C., for plaintiff.

James Kuhn, Pittsburgh, Pa., for Dracup.

P. Christian Hague, Pittsburgh, Pa., for Ward/Ward Transformer.

Robert Burns, pro se.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

The Government has brought this action for injunctive and monetary relief alleging the improper handling, storage and disposal of certain hazardous wastes ("PCBs") in violation of three federal environmental statutes. The matter is before this Court on defendants' motions to dismiss.

Defendant Ward Transformer Co., Inc., a North Carolina corporation, is engaged in the business of buying, selling and rebuilding used electrical transformers. Defendant Robert E. Ward, Jr. is Chairman of the Board of Directors and was the President of Ward Transformer Co. PCBs were used as a lubricant and insulating fluid in electrical transformers. Ward Transformer Co. and Robert E. Ward, Jr. ("the Ward defendants") drained PCBs from electrical transformers and stored them at their facility in North Carolina. The Ward defendants entered into an agreement with defendant Robert J. Burns for the removal of PCB transformer oil which had been stored at their facility.

Defendant Daniel Dracup and his wife, defendant Charlotte Dracup, are the owners of a warehouse site in Youngsville, Pennsylvania. Defendant Daniel S. Dracup & Co. ("Dracup Co."), a New York corporation, is the corporate entity through which Daniel Dracup conducts his trucking business. Daniel Dracup, Charlotte Dracup, and the Dracup Co. shall be referred to as "the Dracup defendants".

Burns and Daniel Dracup removed the PCB oil from the Ward facility and transported it to the Dracup warehouse.

On March 9, 1979 the Government brought a civil action against Burns and the Dracup defendants under the Toxic Substances Control Act ("TSCA"). In that action this Court issued an order, to which the Dracup defendants consented, authorizing the Government to transfer the PCB oil to an appropriate storage facility.

PCB contamination outside the Dracup warehouse was discovered by the Government. The Government now focuses on

contamination at the site and the migration of pollutants into the groundwater. In this action the Government seeks (1) injunctive relief under Resource Conservation and Recovery Act ("RCRA"), (2) injunctive relief and restitution of expenditures it incurred in correcting conditions allegedly created by defendants under TSCA, and (3) recovery of clean-up costs under Clean Water Act ("CWA").

The Ward defendants filed a motion to dismiss the complaint for failure to state a claim, for lack of personal jurisdiction, and, as to Robert E. Ward, Jr., for improper service.[1] At oral argument on their motion the Ward defendants withdrew their objection as to personal jurisdiction. The Ward defendants make the following contentions:

1) RCRA, by its terms, does not cover the regulation of PCBs since PCBs are regulated under TSCA. The Government's PCB claim under RCRA must therefore be dismissed.

2) CWA is the Government's exclusive means of recovering clean-up costs. The Government's restitution claim under TSCA must therefore be dismissed.

3) TSCA and CWA do not apply to them because they are not owner or operators as required by these statutes.

The Dracup defendants have filed a motion to dismiss the complaint for failure to state a claim and, as to Charlotte Dracup and the Dracup Co., for lack of personal jurisdiction. The Dracup defendants have made contentions similar to those made by the Ward defendants with respect to the statutes involved. The Dracup defendants further contend res judicata bars this action as to them.

The motions to dismiss raise five separate issues: 1) whether the Government can bring a PCB claim under RCRA; 2) whether CWA is the Government's exclusive means of recovering clean-up costs; 3)

whether TSCA and CWA are inapplicable to these defendants; 4) whether this Court has personal jurisdiction over the Dracup defendants; 5) whether res judicata bars this action as to the Dracup defendants.

■ 1) Whether the Government can bring a PCB claim under RCRA.

Defendants' argument is grounded in section 1006(b) of RCRA, 42 U.S.C.A. § 6905(b). This section requires the Administrator of the Environmental Protection Agency ("EPA") to integrate, as far as practicable, the provisions of RCRA with the provisions of other environmental statutes so as to avoid duplication. Defendants argue that the handling, storage, and disposal of PCBs are fully regulated under TSCA and that TSCA also authorizes special measures if there are imminent hazards. Since PCBs are regulated under TSCA, defendants contend regulation under RCRA is forbidden duplication.

The Government responds with two lines of argument. First, the Government relies on cases permitting a broad overlap of enforcement mechanisms in environmental law. Second, the Government takes the position, as this Court understands it, that, in this situation at least, RCRA does not duplicate TSCA because enforcement under RCRA is not limited to owners and operators[2] while TSCA is enforceable only against owners and operators. The Government contends that under defendants' construction of RCRA, the Government would have to rely solely on TSCA and CWA and if the defendants are able to prove they are not owners or operators as required by these statutes, they avoid liability.

The Government's position has two fundamental weaknesses. First, the requirement of RCRA that the EPA integrate RCRA with other statutes is inconsistent with the position that the Government can pick and choose its enforcement mechanism.

---

1. Subsequent to the filing of the motion, Robert E. Ward, Jr., was properly served.

2. The Government seeks injunctive relief under section 7003 of RCRA, 42 U.S.C.A. § 6973. This section authorizes the EPA Administrator

to bring suit to restrain "any person contributing to the alleged disposal to stop such . . . disposal or to take such other action as may be necessary."

The cases allowing multiple enforcement relied on by the Government arose in contexts markedly different from the matter *sub judice*; in none of the cited cases were the courts faced with the explicit mandate of section 1006(b) of RCRA. Second, since the comprehensive PCB regulations of TSCA are expressly limited to owners and operators and since section 1006(b) of RCRA expressly mandates the integration of RCRA with other environmental laws, it is doubtful that Congress intended to give the Government broader enforcement power reaching non-owners and non-operators under RCRA. Rather it is more likely that Congress intended PCB regulations to be limited to owners and operators.

The defendants' position, on the other hand, is well-taken. Under TSCA the EPA Administrator has promulgated comprehensive regulations dealing with disposal of PCBs, as well as the handling and storage of PCBs. Subpart B of these regulations is entitled "Disposal of PCBs and PCB Items", 40 C.F.R. § 761, and deals specifically with disposal of PCB transformer oil. Section 7 of TSCA, 15 U.S.C.A. § 2606, is entitled "Imminent Hazards" and gives the Administrator additional authority to seek judicial relief if there is an unreasonable risk of injury to health or the environment. Thus, TSCA adequately addresses the problems of disposal of PCBs and pollution of groundwater raised in the complaint. Allowing the Government to proceed under both TSCA and RCRA would permit the kind of duplication that section 1006(b) of RCRA is designed to prevent. Further, the EPA Administrator stated that the EPA will integrate TSCA PCB regulations and RCRA regulations but "[i]n the interim the handling and disposal of waste PCBs will continue to be regulated under TSCA and other EPA statutes." 45 Fed.Reg. 33086.

For the foregoing reasons, the Government's claim under RCRA will be dismissed. At oral argument on these motions, counsel for the Government indicated that the Government considered RCRA to be a codification of the federal common law of nuisance and sought relief under such a theory, citing *U. S. v. Solvents Recovery Service of New England*, 496 F.Supp. 1127 (D.Conn. 1980). Given this Court's dismissal of the RCRA claim, if the Government wishes to proceed on a theory of a federal common law of nuisance, it would be necessary to amend the complaint. Since such an amendment is not now before this Court, no opinion is expressed regarding such an amendment.

■ 2) Whether CWA is the Government's exclusive means of recovering clean-up costs.

In this action the Government seeks monetary relief under two different statutes: reimbursement under TSCA and recovery of clean-up costs under CWA. Defendants contend section 311 of CWA, 33 U.S.C.A. § 1321(f), is the Government's exclusive means of recovering clean-up costs. Defendants rely on *U. S. v. Dixie Carriers, Inc.*, 627 F.2d 736, 738 (5th Cir. 1980) which holds that section 311 is the Government's exclusive means of recovering clean-up costs of oil spills. The Government contends it is not restricted to section 311, but may be reimbursed under TSCA. The Government argues that defendants' reliance on *Dixie Carriers, supra*, is misplaced, in that *Dixie Carriers* states the law as to vessels but is not dispositive of the matter *sub judice* which involves an on-shore facility. The Government relies on cases allowing multiple enforcement.

The rationale of *Dixie Carriers, supra*, is persuasive. The court focused on the compensation scheme of section 311: to balance the section's imposition of strict liability, liability is limited (but upon proof of willful discharge, liability is unlimited). If the Government could get an unlimited recovery under other statutes, the balance of section 311 would be meaningless. This interpretation of Congressional intent is equally applicable to vessels and on-shore facilities. On the other hand, the cases relied on by the Government allow multiple enforcement but do not address the specific compensation scheme of section 311 and provide little support for its position.

For the foregoing reasons, the Government's claims for reimbursement of clean-up costs under TSCA will be dismissed.

■ 3) Whether TSCA and CWA are inapplicable to these defendants.

Section 311(f)(2) of CWA, 33 U.S.C.A. § 1321(f)(2), allows the Government to recover clean-up costs from an owner or operator of an on-shore facility; TSCA PCB regulations are similarly limited to owners or operators. *See* 40 C.F.R. § 761.42(b).

The Government contends the Ward defendants were engaged in a joint venture with Burns and are therefore liable under CWA and TSCA as owners or operators to the same extent as Burns.[3] The Ward defendants deny the existence of a joint venture and contend they merely entered into an agreement with Burns for removal of the PCB oil and that they fully complied with applicable TSCA regulations to the extent of their involvement as shippers. The extent of the Ward defendants' involvement with Burns raises factual issues which must be resolved at trial. More important for present purposes are the following two contentions. The Ward defendants contend the complaint does not sufficiently allege a joint venture. They also contend "owners and operators" does not include joint ventures as a matter of law.

The applicable standard of review on a motion to dismiss for failure to state a claim is concisely set forth in 2A Moore's Federal Practice ¶ 12.08 at 2266 (2d ed. 1980):

> For purposes of the motion, the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted. "A [complaint] may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of this sort made, or of facts insufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim." But a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.* Pleadings are to be liberally construed. (footnotes omitted)

The sufficiency of the allegations of joint venture in the complaint must be viewed from the perspective of this legal standard. As such the Government's allegations of a joint venture are sufficient to withstand the Ward defendants' motion to dismiss.

The Ward defendants contend that, assuming arguendo they engaged in a joint venture with Burns, the statutory language "owners and operators" does not include joint ventures as a matter of law. They argue that there are no cases applying this language to joint ventures and there is no legislative history indicating its applicability to joint ventures. But the converse of that argument is also true: defendants point to no cases indicating that "owners and operators" excludes joint ventures nor to any legislative history to that effect. Additionally the Ward defendants argue that "owners and operators" must be given its normal and common meaning and that such meaning does not include joint ventures. They argue that the inclusion of joint ventures would broaden "owners and operators" beyond its normal scope and that this extension could work an imposition of statutory liability on remote third parties. However, an examination of the requirements of a joint venture undermines this argument. A joint venture requires joint contribution, profit sharing, and joint proprietary interest in and mutual right to

---

3. The Government's memoranda have referred to sections 311(g) and (h) of CWA, 33 U.S.C.A. §§ 1321(g) and (h), as alternate bases of liability as to the Ward defendants. The defendants have not had an opportunity to fully respond to this argument. Section 311(g) sets forth *third party liability* under CWA and section 311(h) preserves *rights against third parties.* However, the thrust of the Government claims against the Ward defendants rests on a joint venture theory which would impose *direct owner/operator liability* on the Ward defendants. Given this posture, this Court is not disposed to comment on sections 311(g) and (h) of CWA.

control. *Beavers v. West Penn Power Co.*, 436 F.2d 869, 872–73 (3rd Cir. 1971). Thus, a joint venturer is not a remote third party, but rather has a close relationship with the venture. Finding no basis in case law, or legislative history, or logic to hold that "owners and operators" does not include joint ventures as a matter of law, this Court concludes the Ward defendants' motion to dismiss the TSCA and CWA claims as inapplicable to joint ventures must be denied.

Daniel Dracup and Charlotte Dracup raise a different argument as to why TSCA and CWA are inapplicable to them. They concede they own the warehouse site; however, they characterize themselves as innocent absentee landlords who cannot be held liable for the conditions created by their tenant, Burns. They ask this Court to hold that they are not within the reach of the statutory language as a matter of law. This Court rejects this position. The extent of the Dracup defendants' involvement with Burns is disputed and must be resolved at trial. Therefore the Dracup defendants' motion to dismiss the TSCA and CWA claims as inapplicable to them must be denied.

■ 4) Whether this Court has personal jurisdiction over the Dracup defendants.

This Court has personal jurisdiction over Daniel Dracup and Charlotte Dracup. Since they concede they are the owners of the warehouse site, personal jurisdiction can be exercised under 42 Pa. C.S.A. § 5322(a)(5) (Having an interest in, using or possessing real property in this Commonwealth.)

The Dracup Co. is a New York corporation through which Daniel Dracup conducts his trucking business. The complaint alleges the Dracup Co. has an interest in the warehouse site and is involved in commerce involving PCBs in the Western District of Pennsylvania. The brief filed on behalf of the Dracup Co. denies ownership of the warehouse site, but there is no affidavit to that effect. Daniel Dracup admits he helped Burns transport the PCB oil into Pennsylvania. Burns' affidavit states Burns shipped PCB oil "on trucks owned by me, Daniel Dracup and others to the warehouse ..." Personal jurisdiction over the Dracup Co. may be premised on 42 Pa.C.S.A. § 5322(a)(1)(iii) (Transacting any business in this Commonwealth. The shipping of merchandise directly or indirectly into or through this Commonwealth.)

■ 5) Whether res judicata bars this action as to the Dracup defendants.

The Government is not barred by res judicata from bringing this action against the Dracup defendants. The order disposing of the prior action brought by the Government against Burns and the Dracup defendants expressly reserved the Government's right to pursue any appropriate civil remedies against the Dracup defendants. It is well-established that a court in disposing of a suit may reserve the right of a party to bring a second suit arising from the same subject matter. *United States v. Seckinger*, 397 U.S. 203, 207 n. 6, 90 S.Ct. 880, 883 n. 6, 25 L.Ed.2d 224, *reh. den.*, 397 U.S. 1031, 90 S.Ct. 1255, 25 L.Ed.2d 546 (1970); *Lindy v. United States*, 546 F.2d 371, 373 (Ct.Cl.1976).

The foregoing shall constitute findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a). An appropriate order shall issue.