UNITED STATES of America, Plaintiff,

v.

VINELAND CHEMICAL COMPANY, INC. and Arthur Schwerdtle, Defendants.

Civ. A. No. 86–1936.

United States District Court, D. New Jersey.

July 29, 1988.

---

Beverly Kolenberg, Deputy Atty. Gen., Office of Regional Counsel, Region II, U.S. E.P.A., New York City, Carrick Brooke–Davidson, Environmental Enforcement Section, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Franklin J. Riesenburger, Greenblatt & Riesenburger, P.A., Vineland, N.J., Barry S. Neuman, Schnader, Harrison, Segal & Lewis, Washington, D.C., for defendants.

## OPINION

GERRY, Chief Judge.

By now this court is quite familiar with the facts of this case. To recapitulate briefly: this is an action under Section 3008(a) and (g) of The Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(a) and (g), for injunctive relief and civil penalties against The Vineland Chemical Co. ("Vichem") and its Chief Executive Officer, Arthur Schwerdtle (collectively "defendants"), for violations of RCRA at Vichem's facility in Vineland, New Jersey. Defendants operate two surface impoundments which are classified as "land disposal facilities", for hazardous waste 42 U.S.C. § 6924(k), and are subject to the requirements of Section 3005(a) of RCRA, 42 U.S. C. § 6925(a). In August of 1980, defendants, acting pursuant to RCRA's provisions, notified the Environmental Protection Agency ("EPA") that they were en-

gaged in hazardous waste activity. In November, 1980, defendants submitted the first part of a permit application for the authority to continue their hazardous waste activities. The making of this application automatically granted defendants "interim status" to continue their operations pending full review of their application. In January, 1984, defendants submitted the final part of their permit application, although amendments and additions were submitted later.

In early 1984, Congress amended RCRA in one very important way. Believing that many of the statute's interim status provisions were going unenforced, the Congress provided that all existing hazardous waste land disposal facilities automatically lost interim status (and thus their authorization to operate) unless they certified by November 8, 1985, that they were in compliance with all applicable groundwater monitoring and financial responsibility requirements. *See* Hazardous and Waste Amendments of 1984, Section 3005(e)(2) of RCRA, 42 U.S.C. § 6925(e)(2), as amended. This provision is called the "loss of interim status" or "LOIS".

The parties agree that on November 8, 1985 defendants submitted to the EPA a document certifying compliance with groundwater monitoring and incorporating a statement about liability insurance. The EPA determined, however, that the certification failed to comply with the specific requirements of 42 U.S.C. § 6925(e)(2)(B). Consequently, on December 2, 1985, the EPA notified the defendants that their interim status had terminated as a matter of law on November 8, 1985, that they could no longer continue to operate their two RCRA-regulated surface impoundments, that they were required to submit a closure and post-closure plan for the impoundments, and that continued operation could subject them to both civil and criminal penalties.

There seems to be no dispute that defendants did not cease using the surface impoundments after November 8, 1985. *See e.g.*, Defendants' Response to Plaintiff's First Set of Interrogatories, No. 10.

Instead, in February, 1986, defendants petitioned the Court of Appeals for the Third Circuit, seeking review of the EPA's determination regarding interim status. In February of last year the circuit issued its opinion, *Vineland Chemical Co. v. U.S. Environmental Protection Agency*, 810 F.2d 402 (3d Cir.1987), in which it held that defendants failed to satisfy the certification requirements for financial assurance set out in 42 U.S.C. § 6925(e)(2)(B). The court held that there was "no error in the EPA's decision to terminate interim status in this case". *Id.* at 410. This decision is the basis for much of the instant motion.

Before the court at this time is the plaintiff's motion for summary judgment on liability as to Counts 1 and 4 of the complaint, and to strike or in the alternative for summary judgment on the defendants' affirmative defenses. We treat with each count and each affirmative defense in turn.

*Count I*

■ Count I alleges that despite their loss of interim status defendants continued to treat, store or dispose of hazardous wastes in their two surface impoundments. Complaint ¶ 34. The complaint requests civil penalties of $25,000 for each day of violation and injunctive relief to prevent further violations. Because the Court of Appeals has already ruled on the validity of the LOIS determination and because defendants admit using their surface impoundments after November 8, 1985, summary judgment seems clearly appropriate on initial inspection.

But defendants present a very interesting counter-argument. They say: we do not challenge the circuit's decision, nor do we deny using the impoundment after November 8, 1985. However, we dispute that we are liable for RCRA violations because we dispute that we lost interim status on November 8, 1985. Interim status was lost, defendants say, when the Court of Appeals affirmed the EPA's decision on February 6, 1987, not before.

The legal basis for this argument is a line of cases beginning with *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The key proposition of law in

those cases is that a party has a due process right to contest the validity of an administrative order "without necessarily having to face ruinous penalties if the suit is lost." *Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d 1115, 1119 (2nd Cir.1975), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976). Defendants argue that the language and intent of RCRA, as construed by the Court of Appeals, support this as well. Section 6925(e)(2) states that a facility loses interim status on November 8, 1985, "unless the owner or operator of such facility ... (B) certifies compliance with all applicable groundwater monitoring and financial responsibility requirements." Defendants would have us draw a distinction between those who submit *no* certification and those whose certification is found to be insufficient. The former, defendants argue, would obviously have lost their interim status on November 8, 1985. The latter have a due process right to dispute the EPA's determination in court, and cannot be penalized for their decision to exercise that right, defendants contend.

This court finds that the *Ex Parte Young* line of cases is not applicable in this instance, for several reasons. First, the only decision squarely on point of which the court is aware sides with the plaintiff. In *U.S. v. T & S Brass & Bronze Works, Inc.,* 681 F.Supp. 314 at 321 (D.S.C.1988), the court found that:

> Compliance with the [RCRA] statutory deadline was mandatory *even if the defendant's only option was to cease business on November 8, 1985.* By imposing an absolute cut-off date for certifying compliance, Congress had already determined that protection of the public health and the environment was paramount.

(Emphasis added). Second, plaintiff cites a number of decisions in which parties chose to dispute the compliance order of an administrative agency at their peril. For example, in *Train v. Natural Resources Defense Council,* 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975), the High Court noted that when a polluter attempts to obtain a variance of clean air standards and the agency fails to grant such a variance, any

appeal of the agency's decision is taken on the polluter's time, and during the appeal, "original regulations remain in effect, and the polluter's failure to comply may subject him to a variety of enforcement procedures." *Id.* at 92, 95 S.Ct. at 1488.

Also, the plaintiff asks us to distinguish between the *Young* line of cases and the instant case. The former involved challenges to the agency's authority to promulgate the regulation at issue, or to the constitutional validity of the statute. In those instances, plaintiff says, due process demands a stay of statutorily-imposed penalties. Where the issue is not the validity of either the statute or the regulation, but merely the agency's *interpretation* of an admittedly valid statute, regulation or order, due process does not necessitate a stay of statutory penalties during the appeal. We agree. Although the difference between the validity of a regulation and the validity of the interpretation of that regulation is not always clear in practice, it seems to us that the defendant's appeal to the Court of Appeals in the instant matter posed no fundamental challenges, such as that in *Young,* so as to implicate the due process need for a stay.

Finally, and perhaps most importantly, we believe that the purposes of RCRA and other environmental legislation demand that those who challenge the EPA's interpretation of its own regulation do so at their peril. Irreparable damage to the environment could be done if every litigant continued its EPA-condemned acts while exhausting its appeals. For these reasons we reject defendants' arguments. Of course, before we enter summary judgment we must assess the affirmative defenses. We do so below, after first evaluating the arguments for and against liability as to Count IV.

*Count IV*

Count IV alleges that once the defendants lost interim status on November 8, 1985, they had fifteen days in which to file both a closure and a post-closure plan for their surface impoundments. No plan was filed in the next fifteen days. This failure

violated both New Jersey and federal regulations, 40 C.F.R. § 265.112 and NJAC 7:26–9.8(h)(2)(i) and 7:26–9.9(K)(1)(i). The remedy requested is civil penalties and injunctive relief which would require the defendants to submit closure and post-closure plans in a short period of time.[1]

In response to this motion defendants do not deny that they submitted no closure plan within fifteen days of November 8, 1985, or of February 6, 1987. But they say that they had already submitted an adequate plan in September, 1985, as part of their long-term permit application to the New Jersey Department of Environmental Protection ("NJDEP"). Here it is important to understand that the State of New Jersey has the authority for the over-all implementation and operation of RCRA. Thus, defendants initially submitted their RCRA permit applications to state regulatory authorities. The state does *not*, however, have authority to regulate under RCRA's 1984 Hazardous Waste Amendments, the key part of which is the LOIS provision at issue in this suit. This is why the federal government, not the state, is the plaintiff in the present action. In any event, defendants say that their closure plan obligation under the LOIS provisions was satisfied by the September, 1985, submission to the NJDEP, which document was provided as part of defendants' permit application. Whether that submission was adequate, defendants state, is a disputed issue of material fact which precludes summary judgment.

As regards the submission of a post-closure plan, defendants say that no post-closure plan should be required in this instance because such a plan would duplicate studies and plans to be done under the EPA's parallel superfund regulation of Vichem. Such duplication, defendants insist, is prohibited by 42 U.S.C. § 6905(b), which directs the EPA to coordinate and avoid duplication in its administration of RCRA and other federal environmental laws.

With respect to submission of the closure plan the government responds that the plan submitted in September, 1985 does not satisfy RCRA's requirement that a closure plan be submitted within fifteen days of LOIS. First, defendants failed to notify the NJDEP and the EPA of their intent to use the September, 1985, document as their closure plan until mid-November, 1987. This was approximately two years after LOIS occurred. Second, even had the September, 1985, plan been approved for the purpose for which it was submitted—as part of an initial operating application— once LOIS occurred, New Jersey law, NJAC 7:26–9.8(f), required submission of an amended plan within sixty days of defendants' knowledge that they had lost interim status. No amended plan has been filed. Third, the government asserts that even if the September, 1985, plan had properly been submitted, it would, as a matter of law, not have passed muster as a post-LOIS closure plan. This is so because a plan which is submitted as part of a permit application lacks the specificity of one prepared in anticipation of actual closure. Finally, the government asserts that its interpretation of its own regulations—in this instance, that defendants were required to submit a second closure plan—is entitled to deference by the federal courts when that interpretation "is a sufficiently rational one to preclude a court from substituting its judgment for that of the EPA." *Chemical Manufacturers Ass'n. v. Natural Resources Defense Council,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985). Thus, this court should enforce the EPA's interpretation regarding the closure plan.

■ We agree. Both federal and New Jersey regulations concerning closure of hazardous waste facilities suggest that the submission of updated closure plans, in anticipation of actual closure, is of central importance to regulation under RCRA. This is particularly true under the LOIS amendments, which aim to identify and close, *as quickly as possible*, hazardous

---

1. The court notes that defendants have submitted closure and post-closure plans, thus mooting the latter request for relief.

waste facilities which cannot operate safely. *See, e.g.,* HR Rep. No. 198, 98th Cong. 2d Sess. Pt. I at 44, *reprinted in* 1984 U.S.Code Cong. & Admin.News 5576, 5603 (one purpose of the LOIS amendments is "to expedite the final permit review of major land disposal ... facilities and close those facilities that cannot or will not meet the final standards at the earliest possible date."). Thus, it seems clear that without the actual submission of a closure plan or notification that a plan has already been submitted, there is no notice to the regulatory authorities to begin the process through which the plan is reviewed, modified to include all the precise details of the process including a schedule, and finally approved. Accordingly, we find that defendants' failure to submit a closure plan or, in lieu thereof, notice that an earlier submission constitutes its amended plan, within fifteen days of LOIS contravenes RCRA's LOIS requirements.

As to submission of a post-closure plan, we reject defendants' argument that RCRA's non-duplication provision relieves them of the obligation to submit a post-closure plan. The non-duplication provision states, in relevant part,

(b) **Integration with other Acts.** (1) The Administrator shall integrate all provisions of this Act [42 U.S.C.S. §§ 6901 *et seq.*] for purposes of administration and enforcement and shall avoid duplication, to the maximum extent practicable, with the appropriate provision of the Clean Air Act (42 U.S.C. 1857 and following), the Federal Water Pollution Control Act (33 U.S.C. 1151 and following), the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. 135 and following), the Marine Protection, Research and Sanctuaries Act of 1972 (33 U.S.C. 1401 and following), [33 U.S.C. §§ 1401 *et seq.*] and such other Acts of Congress as grant regulatory authority to the Administrator. Such integration shall be effected only to the extent that it can be done in a manner consistent with the goals and policies expressed in this Act [42 U.S.C.S. §§ 6901 *et seq.*] and in the other acts referred to in this subsection.

42 U.S.C.S. § 6905(b). Defendants argue that because of the EPA's regulation of defendants under the superfund legislation, or "CERCLA" (Comprehensive Environmental Response Compensation & Liability Act, 42 U.S.C. §§ 9601 *et seq.*), no post-closure plan can be required. This is so because CERCLA regulation apparently involves post-closure measures similar to those under RCRA. (Incidentally, post-closure measures are needed when a facility is not "closed cleanly" and requires continued monitoring after closure.)

Defendants' argument wrongly discounts the importance of Section 6905(b)'s last sentence. That sentence states, "[s]uch integration shall be effected *only to the extent that it can be done in a manner consistent with the goals and policies expressed in this Act ..."* (emphasis added). This sentence, we believe, suggests that Section 6905(b) creates no rights in defendants to resist regulation; rather it constitutes an exhortation to the EPA to avoid unnecessary and overlapping regulation. Thus, the decision of when to regulate and under which statutes to regulate is left to the EPA's discretion. This reading is buttressed by the legislative history of several of the statutes the EPA enforces. *See, e.g., Weyerhaeuser Co. v. Costle,* 590 F.2d 1011, 1051–52 (D.C.Cir.1978) *quoting* Sen. Edmund Muskie:

[t]he whole concept of EPA is that environmental considerations are to be determined *in one place* by an agency whose *sole mission* is protection of the environment.

A Legislative History of the Water Pollution Control Act Amendments of 1972 at 198 (1973) (emphasis added).

We find that the case defendants cite, *U.S. v. Burns,* 512 F.Supp. 916 (W.D.Pa. 1981), was wrongly decided. There, the district court dismissed RCRA claims believing that those claims impermissibly overlapped claims brought under The Toxic Substances & Control Act (TSCA). The problem with the *Burns* decision, as the government points out, is that the legislative history of TSCA indicates that, "... The Administrator's determination that it is in the public interest to use this Act, is a

completely discretionary decision not subject to judicial review ..." H.Conf.Rep. No. 1679, 94th Cong., 2d Sess. 85, *reprinted in,* 1976 U.S.Code Cong. & Admin.News 4491, 4570. The *Burns* court never explains away TSCA's explicit mandate that regulation under it is without prejudice to regulation under other applicable statutes. Accordingly, the court believes Section 6905(b) is a general admonition against wasteful regulation, not a right enforceable by the regulated. *Cf. Pierce v. Apple Valley, Inc.,* 597 F.Supp. 1480, 1491 (S.D.Ohio 1984) ("Defendant's argument that the government should be estopped from bringing this action because it violated the Federal Reports Act is frivolous.") *See also, U.S. v. Northeastern Pharmaceutical & Chemical Co.,* 810 F.2d 726 (8th Cir.1986) *cert. denied,* —— U.S. ——, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) (enforcement action under both RCRA and CERCLA). For these reasons, then, we find unavailing defendants' arguments that Section 6905(b) relieved them of their obligation to submit a post-closure plan within fifteen days of LOIS.

We turn next to the affirmative defenses to liability. These are the remaining barriers to summary judgment as to counts one and four.

### The Affirmative Defenses

As explained above, plaintiff has moved for summary judgment on counts one and four and to strike all of defendants' 13 affirmative defenses. Defendants have withdrawn defenses 1, 2 and 10 in response to this motion. The rest are left for resolution at this time. We turn first to the defenses which concern liability, numbers 7, 9, 12 and 13. The remaining defenses concern only relief.[2]

### Number Seven

Defense number seven is familiar to us as the RCRA non-duplication defense discussed above. For the reasons already articulated we find this defense unavailing. Therefore, we grant the motion to strike.

### Number Nine

Defense number nine asserts that the relief sought by plaintiff is inconsistent with the orders of the NJDEP. Specifically, plaintiff seeks an order prohibiting defendants' use of two surface containers, while the NJDEP requires defendants to pump groundwater into those same containers. Consequently, defense number nine asks that we dismiss this action for failure to join an indispensable party. However, the apparent conflict—and we have never definitively found a conflict— would seem to have been resolved by the NJDEP's relaxation of the order which compelled pumping. Defendants ask that we not dismiss defense number nine because "discovery in this case has not been concluded." They fail, however, to explain the relevance of discovery when, by their own admission, the apparent conflict between regulatory authorities has been resolved. The motion to strike defense number nine will be granted.

### Number Twelve

■ This affirmative defense states that RCRA is unconstitutional as here applied because it denies defendants both substantive and procedural due process. The procedural due process argument is the same as that articulated above regarding count one: defendants should be allowed to challenge the EPA's decision without having to pay large civil penalties if the appeal fails. We reject that argument for the reasons already stated.

The substantive due process argument is that RCRA's application to these defendants is unreasonable because the continued groundwater pumping after the loss of interim status actually improved groundwater quality. RCRA's prohibition of continued pumping is thus unreasonable, defendants state, and accordingly constitutes a

---

**2.** Defendants argue as an initial matter that the motion to strike the affirmative defenses is untimely. While Fed.R.Civ.P. 12(f) suggests that motions to strike should be made within twenty days of service of the pleading to be stricken, a motion for judgment on the pleadings, which is functionally equivalent, may be made at any time before trial. Fed.R.Civ.P. 12(c). The untimeliness argument is consequently unavailing.

denial of substantive due process. *See U.S. v. Carolene Products Co.*, 304 U.S. 144, 153–154, 58 S.Ct. 778, 784–85, 82 L.Ed. 1234 (1938).

We must reject this defense. First, there is no competent evidence before the court that the groundwater improved after the LOIS. (Although this motion is made on the pleadings plaintiff also asks for summary judgment in the alternative.) Second, and perhaps more importantly, defendants cite nothing which indicates that the facts pled, even if true, would constitute "unreasonable regulation" for due process purposes, or that such arguments are applicable in the environmental field. In the absence of such authority we are compelled to find this defense invalid as a matter of law. The motion to strike will be granted.

### Number Thirteen

The thirteenth affirmative defense is based on the following section of RCRA:

No private entity shall be precluded by reason of criteria established [for financial responsibility] ... from the ownership or operation of facilities ... where such entity can provide assurance of financial responsibility and continuity of operation consistent with the degree and duration of risks associated with [the operation]. 42 U.S.C. § 6924(a).

Defendants contend that their ability to meet the financial responsibility requirements precludes judgment as to counts one and four and an injunction against continued operation of their facility.

This argument is unavailing. The history and text of RCRA indicate that this section was part of the legislation under which the EPA promulgated specific financial assurance requirements. These regulations, including the LOIS regulations, are applicable to defendants and the EPA has found that the defendants have not complied with them. The Court of Appeals, as we indicate above, has affirmed the EPA's finding. Defendants present no reason for

us to find that the circuit's affirmance does not apply to liability on counts one and four, nor have they explained how Section 6924(a) alters the circuit's finding.[3] Accordingly, affirmative defense number thirteen will be stricken.

We have now found inadequate all of the affirmative defenses relevant to liability. Accordingly, they will be stricken and summary judgment will be entered as to counts one and four of the complaint. We turn now to the other affirmative defenses.

### Number Five

The fifth affirmative defense asserts that defendants' groundwater remediation efforts, carried out at their own expense, have substantially improved the groundwater at their hazardous waste site. Accordingly, they state that the "relief sought," presumably an order prohibiting the continued use of the RCRA regulated containment vessels, would not be equitable.

Above we note that there are no facts before us which support this theory, nor is there legal support for the proposition that, if true, the facts pled preclude the relief plaintiff seeks. Accordingly, this defense will be stricken.

### Number Six

Affirmative defense number six asserts that the EPA's misdeeds regarding CERCLA regulation of the defendants equitably precludes the relief plaintiff seeks.

The government moves to strike this defense on two grounds, either one of which we find compelling. First, plaintiff argues that the defendants' attempted inquiry into the propriety of the EPA's actions under CERCLA constitutes pre-enforcement judicial review, which review is explicitly prohibited both by statute and case authority. Second, the government argues that absent a showing of affirmative misconduct, that United States is not subject to estoppel or other equitable defenses when exercising its sovereign powers.

---

**3.** The submissions indicate that there remains a question as to the required level of financial assurance; but this question does not preclude

*liability* for defendants' failure to submit adequate financial assurance.

■ Taking the CERCLA issue first, defendants point out that the statute does not prohibit pre-enforcement review of the precise activity challenged here. Rather, the statute states,

"[N]o federal court shall have jurisdiction ... to review any challenges to removal or remedial action selected under § 9604, or to review any order issued under § 9606(a) ..." (with exceptions not here relevant).

42 U.S.C. § 9613(h). The actions challenged here do not fall into any of the specifically enumerated categories. Rather, defendants attack the EPA's revocation of their ability to perform a remedial investigation and feasibility study ("RI/FS") for their superfund site pursuant to CERCLA. This act by the EPA, defendants say, is neither a remedy under Section 9604 nor an enforcement order under Section 9606(a).

This is a good argument, but it ignores the clear import of 42 U.S.C. § 9622. That section provides:

(a) **Authority to enter into agreements.** The President, *in his discretion may* enter into an agreement with any person (including the owner or operator of the facility from which a release or substantial threat of release emanates, or any other potentially reasonable person), to perform *any* response action (including any action described in section 104(b) [42 U.S.C. § 9604(b) ]) if the President determines that such action will be done properly by such person. Whenever practicable and in the public interest, as determined by the President, the President shall act to facilitate agreements under this section that are in the public interest and consistent with the National Contingency Plan in order to expedite effective remedial actions and minimize litigation. If the President decides not to use the procedures in this section, the President shall notify in writing potentially responsible parties at the facility of such decision and the reasons why use of the procedures is inappropriate. *A decision of the President to use or not to use the procedures in this section is not subject to judicial review.* (emphasis added).

This provision precludes the equitable challenge defendants make in affirmative defense 6. Part of CERCLA's 1986 Amendments, Section 9622 confirms a string of judicial decisions which also provided that the EPA has sole discretion in determining whether responsible parties can conduct an RI/FS or other remedial action. *See, e.g., Wheaton Industries v. U.S. EPA,* 781 F.2d 354, 356 (3d Cir.1986). Accordingly, we find that affirmative defense 6 is precluded by the plain terms of CERCLA.

■ We also find that defense number six is precluded by the legal proposition that the government cannot be estopped when exercising its sovereign powers, absent compelling misconduct. *Heckler v. Community Health Services,* 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224–25, 81 L.Ed.2d 42 (1984) ("We are hesitant ... to say that there are *no cases* [in which there might be grounds for estopping the government] ") (emphasis in original). More particularly, courts have held that the equitable doctrine of unclean hands may not be asserted against the United States when it acts in its sovereign capacity to protect the public welfare. *SEC v. Gulf & Western,* 502 F.Supp. 343, 348 (D.D.C.1980).

Defendants astutely point to an alternative line of cases which suggests that, absent express congressional abrogation, a defendant may assert equitable defenses to an enforcement action. *See, e.g., Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (equitable defenses available under Clean Water Act). The problem with this argument is that the *Weinberger* court, by its own description, affirmed a district court's exercise of equitable power to *"secure prompt compliance"* with federal law. 456 U.S. at 320, 102 S.Ct. at 1807 (emphasis added). This is a very different exercise of equitable power from that which defendants request here, where an enforcement action is sought to be defeated on equitable grounds. Moreover, plaintiff reminds us that this court has held only statutory defenses available under CERCLA. *See United States v. Price,* 577 F.Supp. 1103, 1114 (D.N.J.1983). Finally, we note that when defendants have been allowed to as-

sert equitable defenses in the environmental area those defenses have often been asserted against *private* plaintiffs. *See, e.g., Mardan Corp. v. CGC Music Ltd.,* 600 F.Supp. 1049, 1058 (D.Ariz.1984) *aff'd on other grounds,* 804 F.2d 1454 (9th Cir.1986) ("application of the clean hands doctrine ... will not defeat the intent or purpose of the Act ... [d]efendants remain liable to the *state* or *federal* government ...") (emphasis added). Thus, equitable defenses are not available here, and we grant the motion to strike.

### Number Eight

Affirmative defense number eight alleges various acts of wrongdoing by the EPA in its dealings with defendants. These acts, defendants state, make the equitable relief sought inappropriate. For the reasons expressed immediately above, we must disagree. Motion granted.

### Number Nine

This defense states that civil penalties for defendants' continued operation of the surface impoundments after LOIS would be inequitable given the conflict between the NJDEP's order and federal law under RCRA. This is another equitable defense we find barred by the reasoning above.

### Number Eleven

Defendants have more or less conceded the invalidity of defense number eleven, which states that relief would be unjust given the "balance of the equities." This defense is unavailable for the reasons articulated above.

In summary, we will grant the motions for summary judgment as to counts one and four and the motion to strike the affirmative defenses. An order will be entered.