Frank J. KELLEY, Attorney General of
the State of Michigan; and the State
of Michigan, Plaintiffs,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; Richard E. Thomas; and Grand Trunk Western Railroad Company, Defendants.

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Counter Plaintiff,

v.

Frank J. KELLEY, Attorney General of
the State of Michigan; and the State of
Michigan, Counter Defendants.

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Cross Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; and Richard E. Thomas, Cross Defendants (Two Cases).

THOMAS SOLVENT COMPANY and
Richard Thomas, Counter Plaintiffs,

v.

GRAND TRUNK WESTERN RAILROAD
COMPANY, Counter Defendant
(Two Cases).

GRAND TRUNK WESTERN
RAILROAD COMPANY,
Third–Party Plaintiff,

v.

Richard E. THOMAS, as Trustee of The
Richard E. Thomas Living Trust; The
Richard E. Thomas Living Trust; and

Letha Thomas, Third–Party Defendants
(Two Cases).

UNITED STATES of America, Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation Company; Richard E. Thomas; and Grand Trunk Western Railroad Company, Defendants.

Nos. K86–164, K86–167.

United States District Court,
W.D. Michigan, S.D.

March 7, 1989.

Frank J. Kelley, Atty. Gen. by Robert P. Reichel, Asst. Atty. Gen., Environmental Protection Div., Lansing, Mich., for plaintiff.

Bremer, Wade, Nelson & Alt by Michael D. Wade, Grand Rapids, Mich., for Great American Surplus Lines Ins. Co., intervening non-party and non-participant; Jessie A. Goldfarb, U.S. E.P.A., Office of Enforcement & Compliance Monitoring, Washington, D.C., of counsel.

Foster, Swift, Collins & Coey, P.C. by Charles E. Barbieri, Lansing, Mich., for Thomas Solvent Co. and Richard E. Thomas.

Sullivan, Hamilton & Schulz by James M. Sullivan, Battle Creek, Mich., for Thomas Solvent Co. of Detroit, Inc., Thomas Sol-
vent Inc. of Indiana, TSC Transp. Co., Thomas Solvent Co. of Muskegon, Inc. Thomas Development Co.

Bodman, Longley & Dahling by Frederick J. Dindoffer, R. Craig Hupp, and Mary P. Sclawy, Detroit, Mich., for Grand Trunk Western R. Co.

John S. Smietanka, U.S. Atty. by Julie Ann Woods, Asst. U.S. Atty., Grand Rapids, Mich., Joel M. Gross, Steven J. Willey, Environmental Enforcement Section Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for U.S.; Roger Grimes Asst. Regional Counsel, U.S. Environmental Protection Agency, Chicago, Ill., of counsel.

## OPINION

ENSLEN, District Judge.

This case is before the Court on plaintiff United States's Motion to Strike Certain Affirmative Defenses under Rule 12(f) of the Federal Rules of Civil Procedure.

Plaintiff asserts that the bulk of the defenses which have been asserted by defendants are, as a matter of law, not defenses to the claim asserted here by the United States under Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S. C. § 9607, for recovery of costs incurred in responding to releases and threatened releases of hazardous substances. Plaintiff understands section 107 to contain a clearly defined liability scheme and an explicit limitation of defenses. Defenses which are not within the scope of those enumerated, narrow defenses, or which are otherwise legally insufficient, should be stricken so as to narrow the issues in this litigation and to avoid unnecessary expenditures of time and resources in discovery. Defendant responds by stressing the strict standard under Rule 12(f) on a motion to strike affirmative defenses should not be freely granted.

By way of a brief background, in this action, plaintiff seeks to recover costs incurred by the United States Environmental Protection Agency ("EPA") in responding to releases of hazardous substances which

penetrated soil, entered groundwater and contaminated a substantial number of wells at the Verona Well Field. The Verona Well Field serves as a public water supply for 35,000 residents of the City of Battle Creek, Michigan.

The complaint alleges that in August of 1981 the Verona Well Field was found to be contaminated with various organic solvents. Since 1981, EPA has taken, and it continues to take, various response actions at and around of the Verona Well Field to prevent the further migration of the contamination, and to protect the public health, welfare, and the environment. At this time, EPA's response costs exceed 4.5 million dollars. In this action, plaintiff seeks recovery of the costs incurred to date and a declaration that defendants are liable for future response costs.

### Discussion

#### Motion to Strike Standard

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from any pleading "any insufficient defense." An affirmative defense is insufficient if it is not recognized as a defense to the cause of action. *See, e.g., Memorex Corp. v. International Business Machines Corp.,* 555 F.2d 1379, 1382 (9th Cir.1977); 5 Wright & Miller, *Federal Practice and Procedure,* § 1381, at 789 (1969) (cases cited therein). The purpose of the motion to strike here is to obtain an adjudication of the sufficiency of the defense. *Clark Engineering & Construction Co. v. United Brotherhood of Carpenters & Joiners,* 510 F.2d 1075 (6th Cir.1975).

In *State of California v. United States,* 512 F.Supp. 36 (N.D.Cal.1981), the district court granted plaintiff's motion to strike the affirmative defenses of statute of limitations, laches, and estoppel on grounds that these defenses could not be asserted against the State in its sovereign immunity. The court observed that a motion to strike is well-taken in the following circumstances:

> [The motion is proper] where [it] may have the effect of making the trial of the action less complicated, or [it] may have

the effect of otherwise streamlining the ultimate resolution of the action.

*Id.* at 38. Indeed, the motion to strike under Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Kennedy v. City of Cleveland,* 797 F.2d 297, 305 (6th Cir.1986) (quoting *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983)). *See also, e.g., Anchor Hocking Corp. v. Jacksonville Elec. Authority,* 419 F.Supp. 992 (D.C.Fla.1976).

Once the defense has been stricken, defendant is precluded from offering any evidence in support of it. *Clark Engineering and Constr. Co. v. United Brotherhood of Carpenters,* 510 F.2d 1075, 1083 (6th Cir.1975). Such a motion should be considered carefully and not freely granted. *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819 (6th Cir. 1953). *See also Dunbar & Sullivan Dredging Co. v. Jurgensen Co.,* 44 F.R.D. 467, 472 (D.Ohio) (motion sparingly granted), *aff'd,* 396 F.2d 152 (6th Cir.1968). The Sixth Circuit in *Brown & Williamson* stated as follows:

> Partly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice.

201 F.2d at 822 (citations omitted).

It is not unusual, however, for courts to use a motion to strike for dealing with insufficient defenses raised in CERCLA cost recovery actions. *See, e.g., United States v. Dickerson,* 640 F.Supp. 448 (D.Md.1986).

I. *Liability Based on Unconstitutionally Retroactive Claims*

Amended Answers–Grand Trunk, Defense No. 1

 Thomas Solvent, Defense No. 3

 Spinoffs, Defense No. 3

Each of the defendants asserts that the claims of the United States are unconstitutionally retroactive. For example, Grand Trunk asserts in its First Defense that "Plaintiff's claims constitute an unconstitutional and impermissible retroactive application of law." The Third Defense in the Thomas Solvent Amended Answer and in the Spinoffs Amended Answer are identical. Defendants argue that imposing response costs incurred as a result of acts performed by defendants prior to the enactment of CERCLA is an unconstitutional retroactive application of CERCLA. According to defendants, it would violate due process if this Court were to hold these defendants liable for acts performed prior to the enactment of CERCLA in December 1980. Yet statutes such as CERCLA, "[which adjust] the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and ... the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Pension Benefit Guaranty Corp. v. R.A. Bray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (upholding certain retroactive amendments to ERISA challenged by employers on due process grounds), *quoting Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Defendants do not overcome this presumption of constitutionality.

To begin with, plaintiff argues that CERCLA is not considered to be a retroactive statute in the constitutional sense because of its broad remedial nature premised upon present and future effects of defendants' past actions.[1] A number of courts analyzing the legislative history of this statute have concluded, however, that the purpose inherent in CERCLA is retrospective and remedial. *United States v. Dickerson*, 640 F.Supp. 448, at 451 (D.Md. 1986); *United States v. Conservation*

*Chemical*, 619 F.Supp. 162, 220 (W.D.Mo. 1985); *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1072 (D.Colo.1985). Accord *United States v. South Carolina Recycling and Disposal, Inc.*, 20 Env't Rep.Cas. 1753 (D.S.C.1984); *Jones v. Inmont Corp.*, 584 F.Supp. 1425 (S.D. Ohio 1984); *Ohio ex rel. Brown v. Georgeoff*, 562 F.Supp. 1300 (N.D. Ohio 1983). Congress intended CERCLA to be a tool to foster the cleanup of the 30,000 to 50,000 improperly managed toxic waste sites already in existence at the time of CERCLA's enactment. 5 U.S.Code Cong. & Ad.News 6119, 6119–20 (1980) (*cited in United States v. Miami Drum Services, Inc.*, No. 85–0038–CIV, 1986 WL 15327 (S.D.Fla. Dec. 12, 1986)).

■ The Court agrees that CERCLA is retroactive and that Congress intended it as such. As the court in *United States v. Shell* stated, CERCLA "is by its very nature backward looking." 605 F.Supp. at 1072. The next issue then is whether CERCLA may be constitutionally applied retroactively.

■ Plaintiffs argue that even if CERCLA is retroactive, it is nonetheless constitutional. The constitutional issue centers on whether the standard of rationality and fairness written into the statute squares with the due process clause. The starting point for this analysis is *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). In that case, coal mine operators challenged retroactive portions of the Federal Coal Mine Health and Safety Act of 1969. Under the Act, operators of coal mines were bound to compensate employees disabled by black lung disease even if the employees had terminated their work in the industry before the statute was enacted. The coal mine operators contended that the amended act was unconstitutional because it "charge[d] them with an unexpected liability for past, completed acts that were legally proper and at

---

**1.** In *United States v. Ottati & Goss, Inc.,* the court discussed the relevance and rules regarding retroactive legislation. It stated the well-known rule as follows:

There is a strong presumption against retroactive construction of statutes. *United States v.*

*Heth,* 7 U.S. (3 Branch) 399 [2 L.Ed. 479] (1806). However, when it is clear that Congress intended the statute to be applied retroactively, that presumption may be overcome. 630 F.Supp. 1361 (D.N.H.1985) (citing *Heth* ).

least, in part, known to be dangerous at the time." *Id.* at 15, 96 S.Ct. at 2892.

The Supreme Court rejected the mine operators' argument, stating:

> [O]ur cases are clear that legislation re-adjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability on past acts.

*Id.* at 16, 96 S.Ct. at 2893 [citation omitted].

The Court recognized that the retroactive aspects of legislation must meet the same tests of due process as the prospective aspects, but concluded that this burden is met by showing that retroactive application of the legislation is justified by a rational legislative purpose. *Id.* at 17, 96 S.Ct. at 2893. On this basis, the Supreme Court upheld the constitutionally of the Black Lung Benefits Act, declaring:

> [T]he imposition of liability for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor—the operators and the coal consumers.

428 U.S. at 18, 96 S.Ct. at 2893.

The vitality of the *Turner Elkhorn* test was reaffirmed by the Supreme Court in *Pension Benefit Guaranty Corp. v. Gray*, 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984), wherein the Court stated:

> The retroactive aspects of legislation, ... must meet the test of due process, ... [b]ut that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.

Numerous courts have agreed that CERCLA meets the *Turner Elkhorn* test. In *United States v. Northeastern Pharm. and Chem. Co.*, for example, the court declared:

> It is clear that Congress intended to have the chemical industry, past and present, pay for the cost of cleaning up inactive hazardous waste sites. 126 Cong.Rec. S14, 962, S14, 963 (daily ed. Nov. 24,

1980) (remarks of Sen. Randolph); *id.* at S14, 966 (remarks of Sen. Stafford); *id.* at S14, 972 (remarks of Sen. Tsongas); and 126 Cong.Rec. H11, 799 (daily ed. Dec. 3, 1980) (remarks of Rep. Jeffords). Congress rationally considered the imposition of liability for the effects of past disposal practices as a means to spread the costs of the cleanup on those who created and profited from the waste disposal—generators, transporters, and disposal site owners/operators.

579 F.Supp. 823, 840–41 (W.D.Mo.1984).

In *United States v. Dickerson*, 640 F.Supp. 448 (D.Md.1986), the court struck defenses which alleged that CERCLA is unconstitutionally retroactive. It stated in fact that "[C]ourts have consistently ruled that CERCLA's language and legislative history overrule the presumption against retroactive application of statutes, and have rejected similar constitutional attacks upon the Act." Similarly, the court in *United States v. Conservation Chemical* concluded that the retroactive features of CERCLA, judged by the rational purpose test, readily passed constitutional muster against a facial challenge to its validity. 619 F.Supp. 162 (W.D.Mo.1985). *Accord United States v. Ottati & Goss, Inc.*, 630 F.Supp. 1361, 1399 (D.N.H.1985) ("retroactive application of CERCLA Sections 106 and 107 does not violate constitutional due process requirements [where hazardous waste disposal took place prior to CERCLA's enactment].."); *United States v. Ward*, 618 F.Supp. 884, 898–99 (D.N.C. 1985) (*Shell* opinion is convincing where court there found past acts and expenditures sufficient to withstand due process challenges); *United States v. South Carolina Recycling and Disposal, Inc.*, 20 Env't Rep.Cas. 1753 (D.S.C.1984) ("To the extent that CERCLA is considered retroactive, it clearly satisfies the *Turner Elkhorn* standard."). Finally, the court in *Miami Drum* also determined that CERCLA meets the rationality test of *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). *Miami Drum*, No. 85–0038–CIV, at 21–23. The court specifically rejected defendant's

attempt—like the one made by defendants here—to reserve an "as applied" constitutional challenge for later fact-finding:

> Defendants instead seem to argue that the rational relationship test applicable to due process challenges is somehow fact-dependent. This argument misperceives substantive due process analysis, and without any submission by the defendant to the contrary, there simply is no basis for reserving this issue to be revisited again at a later date.

*Id.* at 23.

Therefore, these defenses must be stricken.

## II. *Defendants that fail to Conform to Section 107(b)(3)*

Amended Answer–Grand Trunk Defense No. 2

■ To begin with, plaintiff originally objected to this defense as presented in defense No. 5 of Thomas Solvent's and the Thomas Spinoffs' original answers. Affirmative defense No. 5 from Thomas Solvent's and the Spinoffs' original answer was omitted in the amended answer. Instead, defendants added an appropriate 107(b)(3) defense to which plaintiff has no objection. Defendant Grand Trunk's Amended Answer, defense No. 2 contains the identical defense that plaintiffs objected to in the original answer. It is that defense which the Court will address at this time.

Congress enacted CERCLA in December 1980 "[t]o provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites," Pub.L. No. 96–510, Stat. 2767 (1980) (purpose clause). Congress was aware when it enacted CERCLA that the costs of cleanup would exceed the Fund established by section 221 of the statute. *See, e.g.,* S.Rep. No. 848, *reprinted* in 1 Legis.Hist. at 325. Thus, dollars expended by the federal and state governments to clean up hazardous waste sites are, whenever possible, to be recovered from responsible parties through the liability scheme from responsible parties set forth in section 107. 42 U.S.C. § 9607. Section 107 imposes liability on present site owners and operators, owners and operators at the time of disposal, and specified categories of generators and transporters of hazardous substances.

In keeping with this broad liability scheme, the only substantive affirmative defenses to liability under CERCLA are those found in section 107(b).[2] The exclusivity of section 107(b) defenses is explicitly discussed in section 107(a) which provides for liability "[n]otwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b) of this section." As a result of this unequivocal intent, a strong majority of courts have held that liability under CERCLA section 107(a) is subject only to the limited defenses provided in section 107(b).[3]

**2.** Section 107(b) of CERCLA, 42 U.S.C. § 9607(b), states:

(b) There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a

preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

(4) any combination of the foregoing paragraphs.

**3.** *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074 (1st Cir.1986) (dictum); *United States v. Dickerson,* at 451 ("CERCLA imposes strict liability for the classes of defendants listed in [Section 107(a)(1)(4) ], subject only to the very limited defenses enumerated in [Section 107(b) ]"); *United States v. Ward,*

Section 107(b) in essence precludes liability where the release (or threatened release) of a hazardous substance was caused *solely* by: (1) an act of God; (2) an act of war; (3) an act or omission of a third party; or (4) any combination thereof. Grand Trunk's affirmative defense number 2 relates to acts of third parties. However, the defense pled is insufficient because it fails to conform to the specifics mandated by section 107(b) with regard to third parties. To establish a defense under section 107(b)(3) defendant Grand Trunk would have to demonstrate that:

(1) a third party was the sole cause of the release of hazardous substances;

(2) the third party is not an employee or agent of the defendant;

(3) the acts or omissions of the third party did not occur in connection with a direct or indirect contractual relationship to the third party; and

(4) the defendant exercised due care with respect to the hazardous substances and took precautions against foreseeable acts and omissions of the third party.

The "third party" defense asserted by defendant fails to conform to these requirements. Grand Trunk, in its amended answer, defense No. 2 states:

The release or threatened release of hazardous substances are due, in whole or in part, to the acts or omissions of third parties over which Grand Trunk has no control and with which it has no contractual relationship within the meaning of 42 U.S.C. § 9607(b)(3).

This defense is deficient on a number of grounds. First, it merely alleges that the third party "in whole or in part" caused the harm. The statute requires a showing that the third party was the sole cause. There is no allegation that the third party was the sole cause and the Court believes that the United States should not be required to pursue discovery as to the factual basis of this defense. Similarly, there is no allegation, as required for a section 107(b)(3) defense, that Grand Trunk exercised due care with respect to the hazardous substances and took precautions against foreseeable acts and omissions of the third party. The defense will be stricken as legally insufficient.

III. *Notice Requirements or Procedural Prerequisites*

Amended Answers—Grand Trunk, Defense No. 3

Thomas Solvent, Defense No. 5

Thomas Spinoffs, Defense No. 5

■ Each of the defendants has asserted as a defense that the United States has not complied with the requirements of CERC-

---

618 F.Supp. 884, 893 (E.D.N.C.1985) ("liability under section 107(a) is subject only to the three defenses, enumerated in section 107(b), which the defendant bears the burden of proving by a preponderance of the evidence"); *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985) (CERCLA provides a limited exception to liability for a release or threat of release caused solely by the events or acts set forth in § 107(b); *Mola Development Corp. v. United States,* 22 Env't Rep.Cas. 1443, 1446, 1985 WL 124 (C.D.Cal.1985); *United States v. Cauffman,* 21 Env't Rep.Cas. 2167, 2168 (C.D.Cal.1984) ("those who formerly owned [hazardous waste] facilities at the time of disposal .... are strictly liable, subject to only limited defenses"); *United States v. South Carolina Recycling and Disposal, Inc.,* 20 Env't Rep.Cas. 1753, 1756 (D.S.C.1984) (once the statutory elements are established "each class is strictly liable *unless* they can prove ... the defenses enumerated in CERCLA Section 107(b)(1)–(4)"); *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 288 (N.D.Cal.1984) (the opening clause of Section 107(a) "states a severe limitation on defens-

es available in cases under section 107"); *United States v. Cramblit,* No. 84–0188, slip op. at 3 (E.D.Cal. June 20, 1984) ("The Court is not persuaded that equitable defenses can ever be raised as defenses to an action brought under Section 107 of CERCLA"); *United States v. Price,* 577 F.Supp. 1103, 1113–14 (D.N.J.1983) ("Congress intended to impose a strict liability standard subject only to the affirmative defenses listed in § 107(b)"); *United States v. Reilly Tar & Chemical Co.,* 546 F.Supp. 1100, 1118 (D.Minn.1982) ("Section 107(a) was meant to stand by itself; ... Liability .... under section 107(a) is absolute, subject only to the defenses listed in section 107(b)"). *But see Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049 (D.Ariz. 1984) (Equitable defense of unclean hands is applicable in *private* party action against another private party under CERCLA for response costs), *aff'd,* 804 F.2d 1454 (9th Cir.); *United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 175, 204, 295 (W.D.Mo.1985) (since Section 106 provides for equitable relief, equitable defenses should be available under Sections 106 and 107).

LA "for prosecution of a statutory action" and has not given "timely or adequate notice of [its] intent to sue as required by CERCLA." *See* Grand Trunk Memorandum in Opposition, at 25; Thomas Solvent Amended Answer ¶ 5, at 4; Thomas Spinoffs Amended Answer ¶ 5, at 3.

I believe these defenses are inadequate as a matter of law and should be stricken because there are not procedural prerequisites in CERCLA to commence a cost recovery action and there are no notice requirements applicable to this type of action.

The notice requirement in CERCLA, found in section 112(a), does not apply to section 107 cost recovery actions by the United States. Before recent amendment, section 112(a) provided:

> All claims which may be asserted against the Fund pursuant to section [111] of this title shall be presented in the first instance to the owner, operator, or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person known to the claimant who may be liable under section [107] of this title. In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the claimant may elect to commence an action in court against such owner, operator, guarantor, or other person or to present the claim to the Fund for payment.

42 U.S.C. § 9612(a).[4]

The Sixth Circuit viewed CERCLA's statutory purpose and structure and held that section 112's 60–day notice requirement does not apply to cost recovery actions under section 107(a). *Walls v. Waste Resource Corp.*, 823 F.2d 977 (6th Cir.1987). The court explained:

> [T]he two-fold purpose of CERCLA is reflected in the statute's bifurcated scheme. On the one hand, CERCLA cre-

ated a Hazardous Substance Response Trust Fund, or Superfund, 42 U.S.C. § 9631, which provides money which the federal government is authorized to spend on dump site cleanup, 42 U.S.C. § 9604, or to use for compensating other governmental or individual parties who have incurred certified response costs, 42 U.S.C. § 9611(a)(2). On the other hand, CERCLA creates a statutory mechanism authorizing civil suits by those who pay for the cleanup of hazardous waste dump sites against those who create them. As this Court has stated previously, 'it is clear that the statute was designed primarily to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for the hazardous wastes.'

*Id.* at 980–81.

Other Circuits have so interpreted the notice requirement in section 112. *See Idaho v. Howmet Turbine Component Co.*, 814 F.2d 1376, 1379–80 (9th Cir.1987); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074 (1st Cir.1986). A number of district courts have reached the same conclusion. *See United States v. Dickerson*, 640 F.Supp. 448 (D.Md.1986); *United States v. Mottolo*, 605 F.Supp. 898 (D.N.H.1985); *Colorado v. ASARCO, Inc.*, 616 F.Supp. 822, 825–26 (D.Col.1985); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 210–11 (D.Mo.1985); *United States v. Wade*, 577 F.Supp. 1326 (E.D.Pa.1983); *New York v. General Electric Co.*, 592 F.Supp. 291, 299–301 (N.D.N.Y.1984); *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 288 (N.D.Cal.1984); *Brown v. Georgeoff*, 562 F.Supp. 1300, 1315 (N.D. Ohio 1983). *But see United States v. Royal Hardage*, 116 F.R.D. 460 (W.D.Okl.1987).

### IV. *Joint and Several Liability*

Amended Answer—Grand Trunk Defenses Nos. 5, 6

---

**4.** In 1986, Congress amended § 112(a) in 1986 to make it clear that its notice requirement applied only when parties intend to assert a claim against the Superfund. *See* Pub.L. No. 99–499, § 112(a), 100 Stat. at 1646 (codified at 42 U.S.C. § 9612(a)). Though the relevant statute in this case is the original version, the Sixth

Circuit has used the recent Congressional action in amending § 112(a) to support its conclusion that § 112(a) does not apply to private actions for recovery of response costs. *See Walls v. Waste Resource Corp.*, 823 F.2d 977, 981 (6th Cir.1987).

The complaint alleges that defendants are jointly and severally liable for various portions of the response costs at issue. Since contaminant from three separate sources are each alleged to have migrated to the Verona Well Field, defendants responsible for each source of contaminant are alleged to be jointly and severally liable for all response costs incurred at the Verona Well Field.[5]

 Grand Trunk states the following as affirmative defenses in its amended answer:

Grand Trunk's liability, if any, is not joint with other defendants because Grand Trunk acted, if at all, separate of other parties, and there is no concert of action so as to impose joint liability.

Grand Trunk's liability, if any, is limited to a pro rata share of damages incurred because it acted, if at all, separately of other parties and because plaintiff's damages can be apportioned.

 Courts have consistently held that except where harm is divisible, liability under CERCLA is joint and several. This joint and several liability is not dependent of a showing of concert of action among defendants. Under traditional and evolving principles of common law which CERCLA incorporates,[6] where two or more defendants are responsible for an indivisible harm, each is subject to liability for the whole harm. *See, e.g., U.S. v. Miami Drum*, No. 85–0038–Civ. slip op. at 20 (S.D. Fla. Dec. 12, 1986); *United States v. South Carolina Recycling & Disposal, Inc.*, 20 Env't Rep.Cas. at 1759, *U.S. v. Conserva-*

*tion Chemical Co.*, 589 F.Supp. at 63; *United States v. Wade*, 577 F.Supp. at 1338–39; *United States v. Chem–Dyne Corp.*, 572 F.Supp. at 808; *United States v. Ottati & Goss*, 630 F.Supp. at 1395. Under this rule, the burden of demonstrating that the harm suffered by the government is in fact divisible and that, therefore, joint and several liability does not apply, rests with defendants. *See United States v. South Carolina Recycling and Disposal, Inc.*, 20 Env't Rep.Cas. at 1759 ("this court's initial focus should be on whether the harm at the ... site was indivisible, an issue upon which defendants bear the burden of proof"); *United States v. Chem–Dyne Corp.*, 572 F.Supp. at 811 (the "burden of proof as to apportionment is upon each defendant"); *United States v. Ottati & Goss*, 630 F.Supp. at 1396 ("[t]he burden of proof is upon the defendants to establish that a reasonable basis exists for apportioning the harm amongst them").

The court in *Miami Drum* stated:

The rule of law that emerges from *Chem–Dyne* and which has met with acceptance by other district courts, is that liability under Section 107(a) is joint and several *unless* a defendant or defendants can prove that the environmental injury is divisible *and* there is a reasonable basis for apportioning the harm.

*U.S. v. Miami Drum*, No. 85–0038–Civ, slip op. at 20 (S.D.Fla. Dec. 12, 1986). The question of whether the alleged harm is divisible is a question of fact. *United States v. Chem–Dyne*, 572 F.Supp. 802 (S.D.Ohio 1983). To sustain their burden of proof, defendants may not propose an

---

**5.** Plaintiffs do not assert that all defendants are liable for the response costs incurred in cleaning up the sources of the contamination themselves. Only those defendants legally responsible for the particular source are alleged to be liable for costs incurred in cleaning up the source.

**6.** The courts have uniformly agreed that although the phrase "joint and several liability" does not appear on CERCLA's face, Congress intended that the doctrine be applied in appropriate circumstances. "[T]he legislative history evinces the intent that the scope of liability under CERCLA, 42 U.S.C. § 9607, be determined from traditional and evolving principles of common law." *United States v. Chem–Dyne*

*Corp.*, 572 F.Supp. at 808. *See, e.g., United States v. Ottati & Goss*, 630 F.Supp. 1361, 1394–95 (D.N.H.1985); *United States v. South Carolina Recycling & Disposal, Inc.*, 20 Env't Rep. Cas. at 1759; *United States v. Wade*, 577 F.Supp. 1326, 1337–38 (E.D.Pa.1983); *United States v. Ward*, 618 F.Supp. at 893. The courts have further agreed that, "[b]ecause of the strong federal interest in the abatement of toxic waste sites and the need for a uniform liability standard," federal common law will govern the application of joint and several liability under CERCLA. *United States v. Wade*, 577 F.Supp. at 1338. *See also United States v. Chem–Dyne Corp.*, 572 F.Supp. at 809.

arbitrary or theoretical basis for apportioning response costs. With a de facto division of harm, defendants liable under CERCLA are jointly and severally liable. "[A]rbitrary or theoretical means of cost apportionment ... are matters appropriately considered in an action for contribution between responsible parties after plaintiff has been made whole." *United States v. South Carolina Recycling & Disposal*, 20 Env't Rep.Cas. at 1759 (cost theoretically apportioned on the basis of volumetric contribution of waste does not render harm divisible); *United States v. Ottati & Goss*, 630 F.Supp. at 1395 (number of drums contributed by each generator does not render harm divisible because proportional harm cannot be isolated with any degree of accuracy).

Because the law is so clear on this issue, the Court will strike defendant Grand Trunk's fifth defense. Concert of action has no relevance to the decision about whether to impose joint and several liability. The Court will not strike Grand Trunk's sixth defense, because it can be read to allege divisibility.

## V. *Statute of Limitation under CERCLA § 107 Cost Recovery Action*

Amended Answers–Grand Trunk Defense No. 7

Thomas Solvent Defense No. 2

Spinoffs Defense No. 2

All defendants have asserted that the CERCLA claims are barred, in whole or in part, by an unidentified statute of limitations.[7] Plaintiff argues that this Court should strike the statute of limitations defenses asserted by defendants since there was no statute of limitations applicable to cost recovery actions under CERCLA § 107. Further, according to plaintiff, even if the six year limitation in 28 U.S.C. § 2415(a) were applied by analogy in this case, this statute does not bar recovery costs incurred by the United States in re-

sponding to releases from defendants' facilities.

Defendants on the other hand argue that affirmative defenses Nos. 2 should not be stricken from their amended answers because this Court should apply a state statute of limitations under *Delcostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In that case, the Supreme Court stated that in some circumstances where there is no applicable federal statute of limitations in a civil action, the state statute of limitations should be applied. The Court also held that federal courts may properly refrain from using a state statute of limitations where a federal statute of limitations is more closely analogous. *Id.* at 171–72, 103 S.Ct. at 2294.

Recently Congress amended CERCLA to provide for a six year statute of limitations on cost recovery actions and a three year statute of limitations for damages arising out of injury to or loss of natural resources. *See* 42 U.S.C. § 9612(d); *Solid State Circuits, Inc. v. U.S.E.P.A.*, 812 F.2d 383, 389 n. 10 (8th Cir.1987). At the relevant time, however, the only statute of limitations in CERCLA was the three year statute of limitations that provided in relevant part:

No claim may be presented, nor may an action be commenced for damages under this title, unless that claim is presented or action commenced within three years from the date of discovery of the loss or December 11, 1980, whichever is later.

42 U.S.C. § 9612(d).

There is also a body of case law that analyzed § 9612(d) as it existed before the 1986 amendments and concluded that the statute applied only to claims against the Superfund and to actions for damages to natural resources under § 9607(a)(4)(C). *See United States v. Dickerson*, 640 F.Supp. 448 (D.Md.1986) (granting motion to strike statute of limitations as affirmative defense to cost recovery claim); *Unit-*

---

**7.** The Seventh Defense in the Grand Trunk Amended Answer is based solely on statute of limitations. The Second Defense in the Thomas and Spinoffs Amended Answers is based on statute of limitations and laches. The insufficiency of the laches defense is discussed in Section VIII of this opinion, *infra*.

ed States v. Conservation Chemical Co., 619 F.Supp. 162, 213 (W.D.Mo.1985); United States v. Mottolo, 605 F.Supp. 898, 901–09 (D.N.H.1985); New York v. General Electric Co., 592 F.Supp. 291, 300 (N.D.N. Y.1984).

A number of courts considering the statute of limitations issue reasoned that since response costs are equitable—not legal—in nature, no analogous legal limitations period applied and the doctrine of laches was the only appropriate limitation on CERCLA response cost lawsuits. See, e.g., United States v. Mottolo, 605 F.Supp. at 901–909; United States v. Dickerson, 640 F.Supp. at 451. Yet even when actions for cost recovery were viewed as legal rather than equitable in nature, courts used a six year limitations period as set forth in 28 U.S.C. § 2415(a), an analogous statute. See, e.g., United States v. Mottolo, 605 F.Supp. at 909 (alternative holding); United States v. Miami Drum Services, Inc., No. 85–0038–Civ, slip op. at 2 (S.D.Fla. July 17, 1986).

Under either approach, a statute of limitations defense is legally insufficient and must be struck.

VI. *Other Persons Potentially Liable as Necessary or Indispensable Parties*

Amended Answer—Grand Trunk Affirmative Defense No. 8

In its eighth defense, Grand Trunk asserts that plaintiff has failed to name necessary or indispensible parties as defendants. While other persons or enterprises may be liable to the government under CERCLA, the Act provides for joint and several liability, as discussed *supra* Section IV, unless the defendants carry the burden of establishing a basis for apportionment. Where two or more parties are jointly and severally liable, the plaintiff need not sue and join all those potentially liable. *United States v. Dickerson,* 640 F.Supp. 448, 450 (D.Md.1986); *United States v. A & F Materials Co.,* 578 F.Supp. 1249, 1260-61 (S.D. Ill.1984); *United States v. Conservation Chemical,* 589 F.Supp. 59, 63 (W.D.Mo. 1984); *United States v. Northeastern Pharm. & Chem. Co.,* 579 F.Supp. 823, 845 n. 26 (W.D.Mo.1984).

According to *United States v. Dickerson:*

The courts have consistently rejected attempts by CERCLA defendants to compel the government to round up every other available defendant, noting that defendants can protect themselves through the impleader provisions of Rule 14. 640 F.Supp. at 450.

This Court agrees with the weight of authority that allow the government wide discretion when choosing among joint tortfeasors.

Further, the court in *Conservation Chemical* and *A & F Materials* followed the Advisory Committee Note to F.R.Civ.P. 19 which deals with necessary and indispensable parties. The Note states that Rule 19 "is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint and several' liability is merely a permissive party to an action against another with liability.... Joinder of these persons continues to be governed by Rule 20; compare Rule 14 on third-party practice." Advisory Committee Notes, 39 F.R.D. 59, 61 (1966).

Even if defendants can establish that joint and several liability should not be imposed, they will not be prejudiced by the absence of other existing liable parties. As the court observed in *United States v. A & F Materials,* 578 F.Supp. at 1261:

If [defendant] can establish that its contribution to the injury is divisible and capable of apportionment, it will not run the risk of multiple liability. Further, [defendant] can protect itself through the impleader provision of Rule 14.

See also *United States v. Northeastern Pharm. & Chem.,* 579 F.Supp. at 845 n. 26.

Grand Trunk's Eighth Defense is thus insufficient as a matter of law.

VII. *Duty to Mitigate "Damages"*

Amended Answer–Grand Trunk Defense No. 9

According to Grand Trunk's ninth defense, the United States has failed to mitigate damages. The United States points out that it is not seeking to recover

*damages*, but instead is pursuing restitution of costs actually incurred or to be incurred. In a thorough analysis of CERCLA's terminology, the court in *United States v. Mottolo*, 605 F.Supp. 898, 904 (D.N.H.1985), concluded that:

'Costs,' although not defined in CERCLA, is consistently used to refer to costs of removal, response, or remedial action incurred in connection with the release of or disposal of hazardous wastes. *See* 42 U.S.C. § 9607(a)(4)(A)–(C).

Thus, the precise issue is whether CERCLA imposes on the government a duty to mitigate response costs. In keeping with the broad and independent liability scheme inherent in § 107 of this Act, 42 U.S.C. § 9607, the Court concludes that because § 107 imposes no duty upon the United States to mitigate costs, this defense is insufficient as a matter of law and will be stricken.[8]

VIII. *Affirmative Defenses Invoking Equitable Doctrines*

Amended Answers–Thomas Solvent Defense No. 8

Spinoffs Defenses Nos. 2, 8

 Both defendants Thomas Solvent and the spinoffs have asserted equitable defenses in response to this CERCLA action. Defendant Thomas Solvent argues that the plaintiff is without clean hands, and has failed to do equity. Defendant spinoffs also plead the clean hands defense, and as a second equitable doctrine, they maintain that laches bar the plaintiff's claim.

As discussed *supra*, § 107(a) of CERCLA bars defenses outside the ambit expressly provided in § 107(b). 42 U.S.C. § 9607. Moreover, it is well established

that the sovereign is immune from equitable doctrines when it asserts public rights. *See, e.g., Pan American Petroleum & Transport Co. v. United States*, 273 U.S. 456, 47 S.Ct. 416, 71 L.Ed. 734 (1927). Where the defenses of unclean hands or laches have been used against the government when it is asserting public rights, courts have repeatedly held that equitable principles will not be applied to thwart public policy or the purpose of federal laws. *See, e.g., Henderson v. International Union of Operating Engineers*, 420 F.2d 802 (9th Cir.1969) (unclean hands); *Eichleay Corp. v. National Labor Relations Board*, 206 F.2d 799 (3d Cir.1953) (unclean hands); *SEC v. Gulf & Western Indus. Inc.*, 502 F.Supp. 343 (D.D.C.1980) (unclean hands); *Chesapeake & Delaware Canal Co. v. United States*, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889 (1919) (laches); *Utah Power & Light Co. v. United States*, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917) (laches); *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (laches).

Therefore, in cases where laches or unclean hands have been asserted in CERCLA actions, many courts have held that such doctrines are not appropriate in CERCLA claims. *See, e.g., United States v. Vineland Chem. Co.*, 692 F.Supp. 415 (D.N.J.1988) (unclean hands); *United States v. Dickerson*, 640 F.Supp. 448 (D.Md.1986) (laches); *United States v. Mottolo*, 605 F.Supp. 898, 909 (D.N.H.1985) (laches); *see also United States v. Reilly Tar & Chemical Corp.*, No. 4–80–469, slip op. at 5 (acknowledging weight of precedent against applying laches to government suits).[9] *But see United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 213 (W.D.Mo.1985) (defers ruling on laches issues until record more fully developed);

**8.** Under 42 U.S.C. § 9607(a)(4), the United States may recover costs "not inconsistent with the national contingency plan" ("NCP"). The NCP is described in 42 U.S.C. § 9605 and promulgated in 40 C.F.R. §§ 300.1–.86 (1987). While a defendant in a CERCLA action may raise inconsistency with the NCP as a defense to an action for costs, *United States v. Outboard Marine Corp.*, 789 F.2d 497 (7th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986), the defendant carries the burden of showing the costs sought under Section 9607 are inconsistent with the plan. *United States v. Northeastern Pharm. & Chemical Co.*, 810 F.2d

726, 747–48 (8th Cir.1986); *United States v. Northernaire Plating Co.*, 685 F.Supp. 1410, 1414 (W.D.Mich.1988). I believe that the proper way to challenge response costs is through the means designed by Congress—inconsistency with the NCP.

**9.** The unclean hands doctrine has similarly been rejected, by a number of courts considering the issue where the one bringing the action is a private party under § 107(a)(4)(B). *See Smith Land & Improvement Corp. v. Celotex*, 851 F.2d 86, 90 (3d Cir.1988); *Chemical Waste Mgmt. v. Armstrong World Indus.*, 669 F.Supp. 1285 (E.D.

*United States v. Reilly Tar & Chemical,* No. 4–80–469, slip op. at 5 (in spite of weight of precedent on laches issues refuses to strike in a factual vacuum).

 Therefore, based on the body of precedent barring equitable defenses in this or similar contexts, the Court believes it should strike defendants' equitable defenses of laches and unclean hands. In addition to the supportive precedent, I am convinced by the reasoning advanced on this issue in *United States v. Vineland Chem. Co.,* 692 F.Supp. at 423–24, including that court's conclusion that *Mardan Corp.* would bar equitable defenses where such defenses were raised against the government in a § 107(a)(4)(A) action.[10]

**IX.** *Additional Affirmative Defenses*

Amended Answers—Thomas Solvent Defense No. 10

Spinoffs Defense No. 10

 Plaintiff objects to defendants' reserved right to add other and further affirmative defenses at a later time. The United States argues that, first, this is not a defense; and second, it should be stricken from the amended answer because of Rule 8(c) of the Federal Rules of Civil Procedure. That rule requires a party to set forth affirmative defenses in an answer. Then if a party wishes to assert additional affirmative defenses, in may seek to amend its answer under Rule 16. In effect, "[i]f an affirmative defense is not pleaded it is waived to the extent that the party who should have pleaded the affirmative defense may not introduce evidence in support thereof ... unless an amendment

to set forth the affirmative defense is properly made." *Albee Homes, Inc. v. Lutman,* 406 F.2d 11, 13 (3d Cir.1969) (quoting 2A *Moore's Federal Practice* ¶ 8.27[3], at 1853 (2d ed. 1968)).[11]

This reserved right to add other defenses shall be stricken from defendants' amended answers. It serves no function as is and any addition of defenses is properly achieved by the terms of the Rules described above.

### ORDER

In accordance with the opinion entered March 7, 1989;

IT IS HEREBY ORDERED that with the exception of Grand Trunk's defense No. 6, the United States's Motion to Strike Affirmative Defenses is GRANTED.

---

Pa.1987). Even in this context, courts have rejected equitable defenses arising in CERCLA. *But cf. Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049, 1057 (D.Ariz.1984), *aff'd on other grounds,* 804 F.2d 1454 (9th Cir.1986).

**10.** The *Mardan Corp.* court explained its approval of the equitable defense of unclean hands in a private response cost recovery action under CERCLA as follows:

[Application] of the clean hands doctrine in CERCLA cases will not defeat the intent and purpose of the Act nor will it contravene public policy. *Defendants remain liable to the state or federal government in an action based upon Section 107(a)(4)(A) of the Act.* Neither defendants' contractual defenses nor the un-

clean hands doctrine would present a bar to recovery if such an action were brought. Hence, the public policy of assuring that responsible parties bear the costs of hazardous waste clean-up is not defeated by application of the clean hands doctrine in a private recovery action under Section 107(a)(4)(B).

**11.** The Court was careful to note, however, that:

[W]e are not holding that if a party fails to raise an affirmative defense in his original responsible pleading, he is forever barred from raising it; we merely hold that normally the proper remedy is to move for leave to amend under Rule 15, F.R.C.P.

*Albee Homes,* 406 F.2d at 13.