**STATE OF ARIZONA and City of Phoenix, Plaintiffs,**

**v.**

**MOTOROLA, INC., et al., Defendants.**

**No. CIV 89–1700–PHX–CAM.**

United States District Court,
D. Arizona.

July 20, 1992.

See also 805 F.Supp. 742.

750

M. James Callahan, H. Paul Graves, Asst. City Atty., Phoenix City Attorney's Office, Phoenix, Ariz., for City of Phoenix.

Linda J. Pollock, Asst. Atty. Gen., Office of the Arizona Atty., General—Civil Div., Phoenix, Ariz., for state of Ariz.

David G. Campbell, Shane R. Swindle, Meyer, Hendricks, Victor, Osborn & Maledon, Phoenix, Ariz., for Allied–Signal, Inc.

Newman R. Porter, Lewis and Roca, Phoenix, Ariz., for Digital Equip. Corp.

Rich Alpert, Cindy Lewis, Digital Equip. Corp., Maynard, Mass., James L. Meeder, Brendan Dolan, Beveridge & Diamond, San Francisco, Cal., F. Paul Beer, Beer and Toone, P.C., Phoenix, Ariz., for Baker Commodities, Inc.

Cynthia T. Kuhn, Asst. Atty. Gen., Tucson, Ariz., Norman D. James, John M. Pearce, Ryley, Carlock & Applewhite, Phoenix, Ariz., for state of Ariz.

Robert H. Allen, Allen, Kimerer & La-Velle, Phoenix, Ariz., for Pasqualettis Properties, Inc., Pasqualetti Properties, and Amos and Edna Pasqualetti.

Judith M. Dworkin, Gust, Rosenfeld, Phoenix, Ariz., for FCC Investors, Inc., f/k/a Valley Seed Co.

Christopher D. Thomas, Karen L. Peters, Mark E. Freeze, Squire, Sanders & Dempsey, Phoenix, Ariz., for plaintiff City of Phoenix.

David Hadley, Jr., Hadley, Poach & Harraway, P.C., Phoenix, Ariz., for defendant Hill Bros. Chemical Co.

## MEMORANDUM AND ORDER

MUECKE, District Judge.

Having considered all the briefing filed with regard to defendants' joint motion for partial summary judgment regarding divisibility of alleged harm, the Court finds that this matter is appropriate for submission

without oral argument[1], and concludes as follows:

## BACKGROUND

In October 1989, the Arizona Department of Environmental Quality ("ADEQ") and the City of Phoenix ("City") filed suit against sixteen separate defendants, seeking to recover approximately $54 million in cleanup costs incurred or to be incurred as a result of the toxic wastes found at the 19th Avenue Landfill in Phoenix. ("the landfill"). In July 1990, Judge Copple ruled that the State of Arizona ("State") must be substituted as plaintiff for ADEQ. Therefore, all references to plaintiffs will include the State of Arizona and the City of Phoenix.

The State and the City seek to recover the cleanup costs pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.* CERCLA was amended by the Superfund and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 (1986), known as "SARA."

In the lead case, No. CIV 89–1700–PHX–CAM, in this consolidated matter ("Lawsuit I"), the State of Arizona and the City of Phoenix joined as plaintiffs to seek recovery of costs which either were incurred or were to be incurred in response to the alleged release or threatened release of hazardous substances from the 19th Avenue Landfill. In the second lawsuit, the State of Arizona filed a complaint against the City of Phoenix, *State of Arizona v. City of Phoenix*, No. CIV 91–0237–PHX–CAM, ("Lawsuit II"). This lawsuit was filed to facilitate the approval of the consent decree between the State and the City.

The United States Environmental Protection Agency ("EPA") is primarily responsible for undertaking the cleanup of hazardous substances. 42 U.S.C. § 9604(a)(1). The EPA, among other things, conducts investigations and determines the risks to public health and the environment. *Id.*

## DISCUSSION

### I. *Summary Judgment*

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rules of Civil Procedure, Rule 56(c). The party seeking summary judgment bears the initial responsibility of showing the absence of a genuine issue for trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must provide to the court a statement of specific uncontroverted facts, separate from its motion for summary judgment, on which it bases its motion. District of Arizona, Local Rule 11(*l*)(1). The moving party need not present affidavits or other materials negating the opponent's claims, but need only inform the court of the basis of its motion and indicated those portions of the pleadings and any other evidentiary matter listed in Rule 56(c) that support its contention that no genuine issue of fact exists. *Celotex*, 477 U.S. at 323–324, 106 S.Ct. at 2553. The moving party must cite specifically the portion of the record where the court can find the particular facts supporting its motion. District of Arizona, Local Rule 11(*l*)(1).

To defeat the motion, the party opposing summary judgment must establish that a genuine issue of fact exists with respect to any element for which it bears the burden of proof at trial. *British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371, 374 (9th Cir.1989). The opposing party may not merely rely on the assertions and allegations of the pleadings, but instead must set forth specific facts showing a genuine issue for trial. Federal Rules of Civil Procedure, Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

**1.** A district court has the discretion to rule on motions without a hearing. *See United States Fidelity and Guaranty Co. v. Lawrenson*, 334

F.2d 464, 467 (4th Cir.), *cert. denied*, 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964); Fed. R.Civ.P. 78.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Like the moving party, the party opposing the motion must direct the court's attention to where those facts appear in the pleadings, affidavits, and other evidentiary matter used to support the opposition; merely citing the record without designating where the fact is stated is not sufficiently specific. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. If the opposing party does not respond in the manner specified in Rule 56(e), summary judgment will be granted. Federal Rules of Civil Procedure, Rule 56(e).

## II. *Joint Motion for Partial Summary Judgment Regarding Divisibility of Alleged Harm.*

Plaintiffs' complaint alleges that defendants are "jointly and severally" liable for alleged CERCLA response costs at the landfill. Complaint, at para. 45. In their answers, some defendants set forth the divisibility defense.

■ Liability under CERCLA is joint and several, where there are multiple defendants, unless a defendant can demonstrate that the harm suffered is divisible. *United States v. Chem–Dyne Corp.,* 572 F.Supp. 802, 811 (S.D.Ohio 1983); *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1447–1448 (W.D.Mich.1989). *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1042, n. 13 (C.A.N.Y.1985). As defendants concede, they bear the burden on the divisibility issue. Reply, at 2, n. 1.

■ The apportionment of response costs generally occurs late in the CERCLA proceedings, under equitable considerations. However, the question of divisibility can arise earlier in the apportionment determination.

There are two distinct contexts in which the issue of "apportionment" arises. It is critical that these two different contexts are not confused. In the first context, the question is whether the harm resulting from two or more causes is indivisible, or whether the harm is capable of division or apportionment among separate causes. If there is a single harm that is theoretically or practically indivisible, each defendant is jointly and severally liable for the entire injury. However, if there are distinct harms that are capable of division, then liability should be apportioned according to the contribution of each defendant.

The second context in which the issue of "apportionment" arises occurs after the first inquiry regarding the indivisibility of the harm. If the defendants are found to be jointly and severally liable, any defendant may seek to limit the amount of damages it would ultimately have to pay by seeking an order of contribution apportioning the damages among the defendants.

*United States v. Western Processing Co.,* 734 F.Supp. 930, 939 (W.D.Wash.1990), *citing United States v. Stringfellow,* 661 F.Supp. 1053, 1060 (C.D.Cal.1987).

■ In *Chem–Dyne,* the court noted that Congress intended for the scope of liability in a CERCLA action to be determined according to principles of common law. *Chem–Dyne,* 572 F.Supp. at 808. When persons act independently to cause a single harm, each is held liable only for the portion of harm caused. *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 260 n. 8, 99 S.Ct. 2753, 2756 n. 8, 61 L.Ed.2d 521 (1979). When persons cause a single and indivisible harm where there is no reasonable basis for division according to the contribution of each, however, they are held liable jointly and severally for the entire harm. *Id, citing* Restatement (Second) of Torts § 433A, 881 (1965).

Defendants seek partial summary judgment on the basis that the harm as alleged by plaintiffs is divisible by one or all of several methods:

(1) physical divisibility;

(2) ordinary landfill closure divisibility;

(3) flood protection divisibility.

### 1. *Physical Divisibility*

■ The landfill consists of two areas: Cell A–1 and Cell A. Defendants argue that only municipal refuse was deposited into Cell A–1, and there was no comming-

ling of refuse between the two (2) cells. Motion, at 7, Defendants' Statement of Facts ("DSOF"), at paras. 3–7. Further, defendants argue that the Remedial Investigation and Feasibility Study ("RI/FS") for the landfill site states that there is no evidence of liquid disposal in Cell A–1, and that no persons interviewed during the investigations recalled any special or hazardous substances ever being deposited into the Cell A–1 site. Motion, at 7; DSOF, at paras. 4–5. Thus, according to defendants, their waste was not disposed of in Cell A–1, so they are not responsible for any releases or threats of releases of hazardous substances from that cell.

Plaintiffs respond that neither the EPA nor the Arizona Department of Environmental Quality ("ADEQ") determined that there was separate harm caused by the release or threat of release from Cell A–1. Plaintiffs argue that the EPA and ADEQ have always treated the landfill as a single facility. Response, at 9, Plaintiffs' Statement of Facts ("PSOF"), at paras. 9–10. The Remedial Action Plan ("RAP") has defined the Landfill as being one Landfill. PSOF, at para. 7.

In essence, defendants are arguing that, although the EPA and ADEQ have considered the environmental damage at the Landfill to constitute a single harm, there is a reasonable basis for apportioning the harm. They maintain that the harm should be apportioned according to the specific location, that is Cell A or A–1, of the identifiable wastes defendants deposited at the Landfill. Defendants state that uncontroverted facts and expert opinion establish an accurate calculation using scientific and engineering principles to divide the response costs. DSOF, at paras. 1–2.

The Court cannot accept that the uncontroverted facts show an undisputed basis for divisibility of harm. There is evidence in the record of releases or threatened releases of hazardous substances into the environment which do not divide one Cell from the other. PSOF, at paras. 1–3, 7, 9–12, 16–26; DRSOF, at para. 10. Defendants have not established through undisputed facts that their hazardous sub-

stances deposited at the landfill alone or in combination with other hazardous substances did not contribute to the release or threat of release. For example, hazardous substances could be washed out of the Landfill during a flood, and a release of hazardous substances could occur as a result of a rising water table saturating a greater volume of refuse, and releasing leachate. PSOF, at para. 7; excerpts from RAP, Exh. 1, pp. 1–3 to 1–4, 1–10.

In light of the potential for commingling or migration of hazardous substances, the court cannot reasonably apportion liability without clear evidence disclosing the lack of, or lack of potential for, interaction of the substances deposited at any or all locations of the Landfill. Based on the submitted evidence, the Court cannot determine that defendants' substances never have, or never will, interact or react with other substances or never have or never will result in environmentally disastrous consequences. It also is not clear that defendants' waste was physically isolated from all other waste, that it never interacted with, or never will interact with, any other waste during a release or threatened release, to create any environmental harm.

#### 2. *Ordinary Landfill Closure Divisibility.*

 Defendants also argue that the implementation of landfill closure measures have nothing to do with defendants' hazardous waste, and are separate and divisible from any harm that may be associated with defendants' waste. Motion, at 8–9, DSOF, at paras. 8, 9, 18. Defendants charge that plaintiffs are attempting to "reap a windfall by passing those costs onto defendants masquerading as CERCLA response costs." Motion, at 10.

The Salt River channel, which is adjacent to the Landfill, is normally dry. PSOF, at 19. In the past, and possibly in the future, washout of some CERCLA hazardous substances in the Landfill material has and can occur. PSOF, at paras. 19–20. Groundwater saturation of the refuse in the Landfill can generate a method for transporting materials away from the Landfill, for example, when the refuse dissolves and leach-

es into the soil and groundwater. PSOF, at paras. 21–22. A soil cap, which defendants consider to be only a type of a landfill closure method, is but one of the methods to be used to help prevent potentially leaking chemicals and further groundwater migration and contamination. PSOF, at para. 13.

Both EPA and the ADEQ have determined that the imposition of the Alternative A remedy is necessary to provide for the protection of human health and the environment. Response, at 6, PSOF, at para. 3–9. The mere fact that some of the actions under the preferred remedy are also consistent with landfill closure techniques, does not mean the actions are inconsistent with the Remedial Action Plan and the Alternative A remedy.[2] The Court believes that the administrative agencies can determine the appropriate remedial action, because they have specialized knowledge and expertise. This Court must accord deference to agency decisions. *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 891–92 (9th Cir.1986). Although defendants are not directly challenging the remedial action choices, they are seeking to have this court cut and paste as to which defendant must be responsible for which portion of the remedial action plan. Congress certainly did not intend for the courts to sever the liability for particular actions under the RAP because they are similar or identical to measures for closing a landfill.[3]

### 3. *Flood Protection Divisibility.*

■ Finally, defendants contend that flood protection was required as part of the basic closure actions of the Landfill site, as a result of the City's gross negligence and illegal conduct in selecting and operating the sites for landfill purposes. Motion, at 11; DSOF, at paras. 20–26. Defendants contend that the City was responsible for locating and operating the Landfill within the floodplain of the Salt River, and knew or should have known of simple guidelines that caution that landfills should not be constructed adjacent to a river channel and in a floodplain. According to defendants, the City's gross negligent and illegal conduct in locating and operating the landfill in the Salt River floodplain, combined with the City's failure to construct adequate flood protection measures, is the sole cause of any alleged harm associated with the need to secure the two landfill sites against future washouts and floods of the Salt River.

Defendants argument is similar to the rationale set forth in their arguments concerning ordinary landfill closure techniques. Defendants arguments are unpersuasive, and not supported by undisputed facts. For the same reasons that the Court was compelled to conclude that divisibility would be inappropriate for ordinary landfill closure methods, the court must also conclude that it is imprudent to allow divisibility on the City's decision to locate and operate the landfill in a floodplain.

Even assuming there is any validity to defendants arguments concerning the City's decision to locate and operate the landfill in the Salt River floodplain—which there is not—the City's alleged responsibility simply does not render defendants free from their own CERCLA liability. In addition, defendants have cited no authority for their proposition that location and operation in a floodplain, or any enforced flood protection measures, excuses defendants from responsibility.

### CONCLUSION

The Court concludes that defendants have failed to establish that there are no

---

2. In 1983, EPA placed the Landfill on the National Priorities List ("NPL"). Pursuant to the National Contingency Plan ("NCP"), a comprehensive environmental investigation of the Landfill was performed and the feasibility of various remedial alternatives analyzed. The City conducted a RI/FS, which the EPA approved. The City also produces an RAP, which designated remedial action at the Landfill. ADEQ approved of Alternative A as the remedy, and EPA agreed with that conclusion, in its Record of Decision ("ROD"). Specifically, the EPA and the ADEQ stated that actions under the remedy, which were identical or similar to landfill closure actions, were "eligible costs of response under CERCLA § 107, 42 U.S.C. § 9607." PSOF, at para. 12.

3. Indeed, the Court notes that actions such as using dikes (and presumably berms) as well as clay covers are entirely consistent with remedial actions under CERCLA. CERCLA § 101(24).

genuine issues of material fact and that they are entitled to partial summary judgment as a matter of law. Defendants have not shown that there are two (2) separate and divisible landfill locations, by failing to establish that the Landfill is divisible on the basis of physical divisibility. They also have failed to establish that the harm is divisible on the basis of ordinary landfill closure divisibility and flood protection divisibility.

The Court concludes that defendants have failed to support by legal and factual recitations their motion for partial summary judgment. This court will not undermine CERCLA's statutory mandate favoring early settlements and encouraging a headstart on response costs, by severing portions of the harm and remedy and response costs as divisible, when there is no basis for doing so. In sum, this Court finds defendants have failed to meet their burden and that the harm is not divisible and reasonably capable of apportionment.[4]

Based on the foregoing, IT IS ORDERED THAT:

(1) Defendants' joint motion for partial summary judgment on the issue of divisibility of alleged harm (Doc. # 614) IS HEREBY DENIED.

**4.** The Court notes that defendants are not foreclosed from further relief, if appropriate. For example, the parties have pending motions concerning joint and several liability. If the defendants are found to be jointly and severally liable, any defendant still may seek to limit the amount of damages it would ultimately have to pay by seeking an order of contribution apportioning the damages among the defendants.